IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RHONDA MAYS,                        )
                                    )
    Plaintiff,                      )
                                    )
                                    )   CIV-14-255-F
v.                                  )
                                    )
CAROLYN W. COLVIN,                  )
  Acting Commissioner of Social     )
  Security Administration,          )
                                    )
    Defendant.                      )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On March 4, 2010, Plaintiff protectively filed her applications, alleging that she became disabled on March 6, 2009, due to a back and neck injury with fused disc, arthritis, cataract, and depression. (TR 281, 286). Plaintiff stated that she stopped working on March

6, 2009, because there was "no light duty for a 25 lb. limit restriction of pushing, pulling, lifting, or prolong[ed] sitting or standing, or walking, and [her] time ran out before having back surgery." (TR 287). She has a 12th grade education, vocational training as a mental health aide, and past relevant work as a patient care assistant. (TR 287-288).

At Plaintiff's request, a hearing was conducted on January 10, 2012, and continued on February 28, 2012, before Administrative Law Judge McLean ("ALJ"). (TR 36-73). At this hearing, Plaintiff appeared with counsel and testified, and a vocational expert ("VE") also testified. The ALJ issued a decision on August 13, 2012, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 18-28). The Appeals Council denied Plaintiff's request for review (TR 8-10), and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. ALJ's Decision

Following the agency's well-established, five-step, sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 6, 2009, her alleged disability onset date. At step two, the ALJ found that Plaintiff had severe impairments due to a back disorder, depression, and anxiety. (TR 20). At step three, the ALJ found that Plaintiff's impairments or a combination of her impairments did not meet or medically equal the requirements of a listed impairment and were therefore not presumptively disabling. (TR 20-21).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

to perform light work except that she could only frequently lift, carry, push and pull 10 pounds, only occasionally lift, carry, push and pull 20 pounds, she could occasionally perform overhead reaching with the upper extremities, she could perform simple and some complex tasks with routine supervision, she could not have public contact or perform customer service, and she could interact appropriately with supervisors and coworkers on a superficial work basis and adapt to a work situation. (TR 23).

In light of this RFC for work and relying on the VE's testimony, the ALJ found that Plaintiff could not perform her past relevant work as a patient care assistant. Reaching the fifth and final step of the evaluation procedure, the ALJ found that considering Plaintiff's age, education, work experience, and RFC for work, there were jobs available in the economy that she could perform, such as price marker, photo copy machine operator, and electronics worker. Based on these findings, the ALJ concluded Plaintiff was not disabled and not entitled to benefits.

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be

3

based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

IV. Relevant Medical Evidence

Plaintiff sustained a work-related injury to her lower back in March 2004. (TR 644). Plaintiff was 39 years old at that time. She was diagnosed with a lumbar strain with pre-existing history of disk protrusion at two levels of her lumbar spine as documented on MRI testing in January 2003. (TR 644). Plaintiff was treated conservatively and continued to work full-time. (TR 653-661).

Plaintiff sustained another work-related injury in May 2008. (TR 678). She also complained of continuing low back pain radiating to her right lower extremity. She was treated by Dr. Bisson who prescribed medications and did not place work restrictions on Plaintiff. However, Dr. Bisson referred her to Dr. Remondino for surgical evaluation. (TR

678).

Plaintiff sought treatment from her family physician, Dr. Bowlware, in October 2008 and complained that she had been hit in the face by a patient. (TR 417). On examination, the physician noted Plaintiff exhibited normal gait and strength in her upper and lower extremities, and the diagnostic impression was neck strain, myalgias, and arthralgias, as well as thoracolumbar disc degeneration. (TR 418).

In October 2009, Dr. Bowlware noted medications, including Lyrica® and Tramadol®, were prescribed for Plaintiff's chronic back pain and depressive disorder with possible anxiety component. (TR 421).

Plaintiff was examined by Dr. Remondino, a neurosurgeon, in January 2009. Dr. Remondino noted a diagnostic impression of focal disc protrusion at one level of Plaintiff's lumbar spine with mild degenerative changes. (TR 536-537). Plaintiff was advised by Dr. Remondino in January 2009 and again in June 2009 that she could continue working with a ten-pound weight limitation. (TR 533, 537).

Plaintiff was referred to Dr. Mitchell for testing. Plaintiff underwent MRI testing in June 2009 which Dr. Mitchell interpreted as showing disc bulges at three lumbar levels. (TR 547). A lumbar discogram conducted in June 2009 was interpreted by Dr. Mitchell as showing concordant pain and morphologic change at only one level of Plaintiff's lumbar spine. (TR 554-555).

In September 2009, Plaintiff underwent surgical fusion of one level of her lumbar spine. (TR 541, 544). The surgeon, Dr. Remondino, noted that Plaintiff was discharged

three days later in stable condition with prescriptions for narcotic pain and muscle relaxant medications. (TR 545). According to Dr. Remondino's notes, Plaintiff did well following her surgery although she complained of ongoing pain (TR 528, 530). In February 2010, Dr. Remondino noted that the fusion looked solid on post-operative MRI and CT testing. (TR 525). The surgeon determined Plaintiff had reached maximum medical improvement and released her from further treatment with a 25-pound permanent weight restriction. (TR 525).

Dr. Carlson conducted a consultative physical examination of Plaintiff in July 2010. (TR 596-598). Plaintiff complained of low back pain that radiated into her legs and prevented her from sitting or standing for long periods of time. (TR 596). Dr. Carlson noted Plaintiff walked with a normal speed and safe and stable gait without using an assistive device. (TR 597). She exhibited decreased ranges of motion in her lumbar spine, neck, and hips. (TR 597-602).

In February 2011, Plaintiff was evaluated by Dr. Friedman for her complaint of neck pain following her May 2008 work-related injury. (TR 713). Dr. Friedman interpreted MRI testing of Plaintiff as showing a disc protrusion at one level of her cervical spine and desiccation with central bulge at a second level but no disc herniation. (TR 713). Conservative treatment, including physical therapy and epidural steroid injections, provided some improvement in her symptoms. (TR 713). She was restricted to light-duty work. (TR 713). In March 2011, Dr. Friedman recommended a cervical discogram and continued the light-duty work restrictions. (TR 710).

Although there is no operative report, Dr. Friedman noted that in June 2011 Plaintiff

6

underwent anterior cervical discectomy and fusion at one cervical level. (TR 708). Two weeks later, Plaintiff reported improvement in her neck and shoulder pain, and physical therapy was initiated. (TR 707). In October 2011, Dr. Friedman noted that Plaintiff reported she was no longer taking any pain medications, she was doing well, her neck was much improved, and she was walking and doing a home exercise program. (TR 706). In November 2011, Dr. Friedman noted Plaintiff was "making great progress," her pain was "steadily improving," she was not using pain medications, and she was scheduled for one more month of physical therapy. (TR 720). Plaintiff was given temporary work restrictions of 15 pounds lifting, pushing, or pulling. (TR 721).

In December 2011, Dr. Friedman noted Plaintiff had progressed "beautifully," she was using non-narcotic medications only occasionally, and she complained of "minimal" pain that did "not prevent her from doing any of her daily activities." (TR 718). Dr. Friedman imposed permanent restrictions upon Plaintiff only to "avoid agressive [sic] or combative patients." (TR 719).

V. Credibility

Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility because the ALJ improperly used improper "boilerplate" language in the decision indicating she "pre-determined" Plaintiff's RFC for work and also did not affirmatively link relevant factors to specific evidence in the record.

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and

7

[their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). See 20 C.F.R. §§ 404.1529, 416.929. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at * 3. See 20 C.F.R. §§ 404.1529, 416.929 (listing factors); Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not,

however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

In this case, the ALJ recognized in her decision that Plaintiff had pain-causing impairments and that Plaintiff's credibility concerning her allegations of disabling pain and other limitations must therefore be assessed under the guiding regulations and authority. (TR 23-24). Thereafter, the ALJ expressly considered Plaintiff's testimony concerning her daily activities, her mother's third-party function report, the medical evidence concerning Plaintiff's treatment for her back and neck injuries, the report of the consultative physical examiner, and the opinions of the state agency medical consultants regarding Plaintiff's RFC for work.

Nothing in the ALJ's decision indicates, as Plaintiff suggests, that the ALJ "pre-determined" Plaintiff's RFC for work before considering the credibility of Plaintiff's complaints of disabling pain and other limitations. Mr. Mitzner, Plaintiff's attorney, has made this same, unsuccessful argument in several recent briefs in social security disability appeals referred to the undersigned Magistrate Judge. The argument is based on a single, unpublished decision issued by the Seventh Circuit Court of Appeals, Bjornson v. Astrue, 2012 WL 280736 (7th Cir. 2012)(unpublished op.).

The same argument has been presented in social security disability appeals in other

9

district courts. In the United States District Court for the Northern District of Oklahoma, District Judge Eagan rejected the argument, stating in a footnote that "Bjornson, because it is a Seventh Circuit case, is not binding precedent. Further, as noted by the magistrate judge, the decision to reverse and remand in Bjornson was not based on the ALJ's use of boilerplate language but, instead, on the ALJ's entire failure to 'build a bridge between the medical evidence ... and the conclusion that [plaintiff] is able to work full time in a sedentary occupation.'" Liveoak v. Astrue, 2013 WL 183710, *10 n. 2 (N.D. Okla. 2013)(unpublished op.).

Recently, the Tenth Circuit Court of Appeals addressed the now-familiar Bjornson argument. The court stated the following:

> Relying on Bjornson v. Astrue, 671 F.3d 640, 645–46 (7th Cir. 2012), [claimant] urges this court to reverse because the ALJ's decision, apparently in accord with the standard decision template, sets forth the RFC finding before discussing the factors that go into making that finding, including the credibility determination. We decline to reverse on this ground.

Romero v. Colvin, Case No. 13–2200, 2014 WL 2210747 n. 1 (10th Cir. May 29, 2014).

In this court, United States Magistrate Judge Erwin rejected the same argument, noting that "Plaintiff's Bjornson argument is without support in the Tenth Circuit." Collins v. Comm'r, 2014 WL 3587788 (W.D. Okla. 2014)(unpublished op.)(Erwin, M.J.). In this circuit, "the use of . . . boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" Keyes-Zachary v. Astrue, 695 F.3d 1136, 1170 (10th Cir. 2012)(quoting Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)).

10

The ALJ in this case did not limit her credibility decision to "boilerplate" language. Rather, the ALJ considered several, relevant factors before determining that Plaintiff's allegations of disabling pain and limitations were not entirely credible. The RFC determination, however, includes exertional and nonexertional limitations indicating that the ALJ did not entirely reject Plaintiff's testimony but considered it in connection with the objective medical evidence in the record.

Plaintiff suggests that the ALJ was "required to list her specific reasoning reflecting that Ms. Mays was exaggerating or not following doctor's orders or malingering. No such reference can be found in the record." Plaintiff's Opening Brief, at 6. Contrary to Plaintiff's argument, the ALJ's decision includes a thorough discussion of the evidence, both medical and nonmedical, and adequate references to the record to support the credibility determination. Dr. Remondino and Dr. Friedman both found that Plaintiff was capable of performing work-related activities and was not disabled due to pain related to her back or neck impairments. Moreover, contrary to Plaintiff's suggestion, the ALJ did not base the credibility determination on her "limited" daily activities but properly considered Plaintiff's statements and her mother's statements concerning her activities in addition to consideration of the objective medical evidence in the record. No error occurred in the ALJ's consideration of Plaintiff's credibility, and the ALJ's credibility determination is well supported by the evidence in the record.

VI. Analysis of Medical Source Opinions

Plaintiff contends that the ALJ's analysis of the opinions of treating, examining, and

11

nonexamining physicians in the record was faulty. The Commissioner responds that no error occurred in the ALJ's evaluation of the evidence.

Generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). However, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted). When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Id. at 1077.

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

Plaintiff first contends that the ALJ erred in giving "great weight" to the opinions of the state agency medical consultants because they are not treating physicians. However, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. [She] must also discuss the weight [she] assigns to such opinions," including the opinions of state agency medical consultants. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). See Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003)(ALJ is required to consider the opinions of non-treating physicians and to provide specific, legitimate reasons for rejecting

12

such opinions)(citing, e.g., 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, *1).

Contrary to Plaintiff's suggestion, therefore, the opinions of agency medical consultants are not considered "of dubious value," and Plaintiff does not suggest that the opinions were not supported by medical evidence in the record. The ALJ did not err in considering and giving "great weight" to the opinions of the state agency medical consultants.

With Plaintiff's next argument, Plaintiff misreads the record. Plaintiff argues that Dr. Friedman released Plaintiff from treatment with a permanent 15-pound weight restriction. Dr. Friedman's record of treatment of Plaintiff, as set forth *infra*, shows that the only permanent restriction imposed upon Plaintiff by Dr. Friedman was an admonition that she avoid aggressive or combative patients. (TR 719). Dr. Remondino imposed a permanent 25-pound weight restriction upon Plaintiff. There is no inconsistency between these restrictions that the ALJ should have considered in the decision, and the ALJ's RFC determination for a limited range of light work is consistent with the treating physicians' opinions.

Plaintiff contends that the ALJ "false[ly]" stated on pages 21 and 25 of the decision that Plaintiff was "not taking any pain medications" following her cervical operation. Plaintiff's Opening Brief, at 11. Again, Plaintiff has misread the record. On page 21 of the decision there is no language to this effect. On page 25 of the decision, the ALJ summarized the report of Dr. Friedman dated October 11, 2011, in which the physician stated that Plaintiff "had 'done very well' and was not taking any pain medications and had rated her

pain as a 3/10." (TR 25). In Dr. Friedman's October 11, 2011 progress note, Dr. Friedman did, indeed, state that Plaintiff was "no longer taking any pain medications by mouth." (TR 706). Plaintiff suggests that she was taking non-narcotic medications at that time, but the ALJ was merely summarizing Dr. Friedman's progress note in the decision, and the ALJ did so properly. No error is shown with this unsupported argument.

Although Plaintiff suggests that the ALJ should have included a limitation for "reaching in all directions," Plaintiff does not support this alleged limitation with any reference to objective medical evidence in the record suggesting that such a limitation was imposed on Plaintiff. Dr. Friedman imposed no such limitation, and Dr. Rodgers, a medical consultant for the agency, opined that Plaintiff was limited to "[o]ccasional overhead reaching" with her shoulders. (TR 25, 637). The ALJ did not err by failing to include a limitation for "reaching in all directions" in the RFC finding.

Finally, Plaintiff asserts that the ALJ erred by relying on "stale" opinions by the agency medical consultants. Again, Plaintiff does not point to objective medical evidence in the record indicating, as Plaintiff suggests, that the opinions were inconsistent with other medical evidence of treatment of Plaintiff after the opinions were rendered. Dr. Aber completed a physical RFC assessment of Plaintiff for her back and arthritis impairments dated August 8, 2010. (TR 603-610). The physician opined that Plaintiff was capable of performing light work, and the physician provided a lengthy explanation for the opinion with specific references to the medical evidence in the record. (TR 604-605). Dr. Rodgers completed a physical RFC assessment of Plaintiff for her back and arthritis impairments

14

dated October 19, 2010. (TR 634-641). Dr. Rodgers also opined that Plaintiff was capable of performing light work. As the ALJ noted in the decision, Dr. Rodgers opined that Plaintiff was limited to "[o]ccasional overhead reaching" with her shoulders. (TR 25, 637). The physician provided a lengthy explanation for the opinion with specific references to the medical evidence in the record

The fact that Plaintiff underwent cervical fusion surgery after these RFC assessments were rendered does not indicate the assessments were "stale." Dr. Friedman, Plaintiff's treating surgeon for her cervical fusion, did not impose work-related restrictions that were inconsistent with Dr. Aber's opinion, and Dr. Aber's and Dr. Rodger's opinions were rendered following Plaintiff's release from Dr. Remondino's care in February 2010 and following the physical consultative examination of Plaintiff conducted by Dr. Carlson in July 2010. The ALJ did not err in giving Dr. Aber's and Dr. Rodger's opinions "great weight." The ALJ's RFC determination included the limitation of "occasional overhead reaching with the upper extremities," consistent with Dr. Rodger's opinion. The ALJ did not err with respect to the consideration of the opinions of the agency's medical consultants.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ February 23rd, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this

Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     2nd     day of     February    , 2015.

*Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE